# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**NICHOLE L. RIVERA**
        **Plaintiff,**

    **v.**                                                              **Case No. 11-C-966**

**MICHAEL J. ASTRUE,**
**Commissioner of the Social Security Administration**
        **Defendant.**

## DECISION AND ORDER

Plaintiff Nichole Rivera applied for social security disability benefits, claiming that she could not work due to migraine headaches, asthma, and chronic low back pain. (Tr. at 161-67, 173-83.) After the Social Security Administration ("SSA") denied her application initially and on reconsideration (Tr. at 106-23), plaintiff asked for a hearing before an Administrative Law Judge ("ALJ") (Tr at 124-25). Plaintiff's counsel, retained shortly before the January 11, 2011 hearing, indicated that the medical records needed to be brought up to date. He stated that "we're in the process of getting them, and I would assume 30 days would be sufficient unless I contact you and indicate otherwise." (Tr. at 87.) The ALJ responded: "Okay. We'll wait 30 days then before I issue a decision, and as you indicated, if you are not able to get those records to me within those 30 days, you must contact the office, otherwise a decision will be issued based on what's before me at that time." (Tr. at 89.) Counsel replied: "That's fine." (Tr. at 89.) At the conclusion of the hearing, the ALJ reiterated: "Thirty days for those records, and if they're not updated, let me know if it's going to be a problem getting them within that time." (Tr. at 104.)

On February 9, 2011, plaintiff's counsel requested an additional thirty days, indicating

that while he had ordered the records they had not yet been received. (Tr. at 69.) The ALJ never formally ruled on the request and instead issued a decision denying the application on March 4, 2011 (Tr. at 54); that same day, plaintiff faxed a report from her treating neurologist, Dr. Thorat, dated March 1, 2011, setting forth significant limitations based on migraines (Tr. at 6-11). In denying the application, the ALJ rejected plaintiff's claims of severe limitations based on her migraines, specifically noting the absence of any treating physician report supporting her allegations; she made no mention of Dr. Thorat's report.[1] The Appeals Council denied plaintiff's request for review (Tr. at 1), making the ALJ's decision the final word from the SSA on plaintiff's claim. See Shauger v. Astrue, 675 F.3d 690, 695 (7th Cir. 2012).

Plaintiff now seeks judicial review of the ALJ's decision under 42 U.S.C. § 405(g). She argues that the ALJ breached her duty to fully and fairly develop the record by issuing a decision before all the evidence was in. She further argues that the ALJ erred in considering the impact of migraines on her ability to work and in evaluating the credibility of her testimony. Based on these errors, she seeks remand under § 405(g), sentence four. Alternatively, she argues that Dr. Thorat's report constitutes new and material evidence supporting remand under § 405(g), sentence six.

The Commissioner responds that the ALJ never affirmatively agreed to the additional thirty days and cannot be faulted for failing to consider evidence not before her. In any event, the Commissioner contends, because Dr. Thorat's report is conclusory and unsupported there is no basis for remand to consider it under sentence four or sentence six. The Commissioner further contends that plaintiff fails to identify any further limitations due to her headaches, and

---

[1]Plaintiff did submit medical records on February 22, 2011, which were made part of the record before the ALJ. (Tr. at 618.)

2

that the ALJ provided sufficient reasons for discounting plaintiff's testimony.

While a sentence six remand might also be appropriate, I will for the reasons that follow return the case to the SSA for further proceedings under sentence four.

## I. APPLICABLE LEGAL STANDARDS

### A. Section 405(g)

Section 405(g) permits a social security claimant to obtain judicial review of adverse decisions by the SSA. 42 U.S.C. § 405(g). The statute provides two methods by which the reviewing court may remand the matter to the agency for further action – "sentence four" and "sentence six." See, e.g., O'Connor v. Shalala, 23 F.3d 1232, 1233 (7th Cir. 1994) (citing Shalala v. Schaefer, 509 U.S. 292, 296 (1993)). Under sentence four, the court addresses the merits of the case and, if it finds error, may remand for an award of benefits or to permit the agency to reconsider the evidence and possibly rectify deficiencies in the decision. See, e.g., Richmond v. Chater, 94 F.3d 263, 268 (7th Cir.1996); Acevedo v. Barnhart, 474 F. Supp. 2d 1001, 1003 (E.D. Wis. 2007). Under sentence six, conversely, the court does not rule on the merits but rather retains jurisdiction over the case and remands to allow the SSA to consider new evidence; once that process is complete, the matter returns to the district court, if necessary, for a decision on the merits. Acevedo, 474 F. Supp. 2d at 1003.

#### 1. Sentence Four

While the court considers the merits under sentence four, it does not reconsider whether the claimant is disabled. See Cass v. Shalala, 8 F.3d 552, 555 (7th Cir. 1993). Rather, the court asks whether the ALJ's decision is supported by "substantial evidence," sufficiently explained, and consistent with applicable law. See, e.g., Jelinek v. Astrue, 662 F.3d 805, 811

3

(7th Cir. 2011); Weatherbee v. Astrue, 649 F.3d 565, 568 (7th Cir. 2011); Hopgood ex rel. L.G. v. Astrue, 578 F.3d 696, 698 (7th Cir. 2009). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Skinner v. Astrue, 478 F.3d 836, 841 (7th Cir. 2007). Under this deferential standard, the court may not displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations; if reasonable people could differ over whether the claimant is disabled, the court will affirm the ALJ's decision denying the claim if it is adequately supported and explained. Elder v. Astrue, 529 F.3d 408, 413 (7th Cir. 2008).

Nevertheless, the court must conduct a critical review, ensuring that the ALJ fully and fairly developed the record, considered the important evidence, and built an accurate and logical bridge from the evidence to the conclusion. See, e.g., McKinzey v. Astrue, 641 F.3d 884, 889 (7th Cir. 2011); Nelms v. Astrue, 553 F.3d 1093, 1098 (7th Cir. 2009). Because social security proceedings are inquisitorial rather than adversarial, it is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits. Sims v. Apfel, 530 U.S. 103, 110-11 (2000). The ALJ's obligation is heightened when the claimant is unrepresented, see, e.g., Thompson v. Sullivan, 933 F.2d 581, 585-86 (7th Cir. 1991), but the duty exists even when the claimant has a lawyer, e.g., Patterson v. Barnhart, 428 F. Supp. 2d 869, 887 (E.D. Wis. 2006). While the ALJ generally has discretion as to how much evidence to collect, see Luna v. Shalala, 22 F.3d 687, 692 (7th Cir. 1994) – and the court will require a significant omission in order to remand, id. – an ALJ aware of specific, relevant medical information absent from the record must take steps to obtain it, see Nelms, 553 at 1099; Vaile v. Chater, 916 F. Supp. 821, 830 (N.D. Ill. 1996); see also Smith v. Apfel, 231 F.3d 433, 437-38 (7th Cir. 2000). In some cases, this may require the ALJ only to hold the record open after the

4

hearing to allow the claimant time to obtain records or reports, see, e.g., Cooper v. Astrue, No. 10-1694, 2011 WL 240177, at *4 (E.D. Pa. Jan. 26, 2011); in others, the ALJ may be required to take affirmative steps, such as subpoenaing records counsel could not obtain, see, e.g., Harris v. Massanari, No. Civ. A. 00-3105, 2002 WL 10466, at *4 (E.D. La. Jan. 3, 2002).

### 2. Sentence Six

Remand under six is appropriate if the claimant comes forward with "new" and "material" evidence and shows that "there is good cause for failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). Evidence is "new" if it was not in existence or available to the claimant at the time of the administrative proceeding, and "material" if there is a reasonable probability that the ALJ would have reached a different conclusion had the evidence been considered. Jens v. Barnhart, 347 F.3d 209, 214 (7th Cir. 2003); Perkins v. Chater, 107 F.3d 1290, 1296 (7th Cir. 1997).

### B. Remand in Failure to Develop the Record Cases

In most cases, the distinction between a remand under sentence four and a remand under sentence six will be clear. However, in cases where the claimant argues that the ALJ failed to fully and fairly develop the record, the borderline may not be so well marked. Richmond, 94 F.3d at 268. While the correctness of an ALJ's decision will ordinarily depend on the evidence that was actually before her, e.g., Eads v. Sec'y of the Dep't of Health & Human Servs., 983 F.2d 815, 817 (7th Cir. 1993), if the ALJ can be faulted for failing to hold the record open or otherwise obtain and consider important evidence, the remand should be under sentence four, rather than sentence six. See Cooke v. Commissioner of Social Security, No. 1:09CV0842, 2010 WL 5480745, at *1-2 (N.D. Ohio Sep. 30, 2010); see also Buckner v.

5

Apfel, 213 F.3d 1006, 1010-11 (8th Cir. 2000).[2]

## II. THE ALJ'S DECISION

In denying plaintiff's claim, the ALJ followed the familiar five-step process for deciding disability claims. See 20 C.F.R. § 404.1520; Craft v. Astrue, 539 F.3d 668, 673 (7th Cir. 2008). At step one, the ALJ concluded that plaintiff had not engaged in substantial gainful activity ("SGA") since the alleged disability onset date. While plaintiff did work as a fill-in bartender six to eight hours per month, this work did not rise to SGA levels. (Tr. at 59.) At step two, the ALJ found that plaintiff suffered from the severe impairments of migraine headaches, asthma, and chronic low back pain. (Tr. at 59.) The ALJ concluded at step three that none of plaintiff's impairments qualified as conclusively disabling under the regulations. (Tr. at 60.)

The ALJ then found that plaintiff retained the residual functional capacity ("RFC") to perform light work, except for no working at unprotected heights, no operating of hazardous machinery, and no concentrated exposure to respiratory irritants. (Tr. at 60.) In making this determination, the ALJ considered plaintiff's testimony at the hearing, stating:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(Tr. at 61.) The ALJ noted that, in spite of her testimony to the contrary, the medical records showed that plaintiff frequently took Vicodin, despite her physician's caution that the medication

---

[2]There may be cases where the court remands under both sentence four and sentence six. See, e.g., Jackson v. Chater, 99 F.3d 1086, 1095 (11th Cir. 1996) ("Suppose the ALJ clearly commits an error in the course of considering the evidence presented, and just as clearly there is also some new evidence that the claimant is entitled to have presented and considered, apart from any error by the ALJ.").

6

could cause rebound headaches. The ALJ also noted that plaintiff used a tanning bed, an activity the ALJ found inconsistent with migraine headaches. The ALJ further noted the medical records suggesting that plaintiff switched doctors after concerns were raised about duplicate pain medication and not following recommendations. Finally, the ALJ noted that no treating physician limited plaintiff to the degree she asserted; rather, they provided limited and conservative treatment, treatment inconsistent with what would be expected if the physicians found her symptoms and limitations as severe as she reported. (Tr. at 61.)

The ALJ also concluded that the objective medical evidence failed to fully support plaintiff's claim. (Tr. at 61-63.) While plaintiff frequently visited the emergency room for migraine headaches, a CT scan of the brain was normal, and one of her physicians raised concerns about her seeing other doctors for pain medications for her migraines and not following recommendations. (Tr. at 62.) The ALJ further noted that one of the state agency reviewing physicians found plaintiff capable of performing medium work, with some postural and environmental limitations. (Tr. at 62.) The other reviewing physician found her capable of light work with restrictions on working at heights or around hazards due to her history of migraines. This physician reported that plaintiff's migraines were mostly controlled by medications. The ALJ credited these opinions based on supportability with medical signs and laboratory findings, consistency with the record, and area of specialization. (Tr. at 62-63.)

Based on this RFC, the ALJ concluded at step four that plaintiff was capable of performing her past relevant work as a bartender, retail cashier, customer service rep, hospital receptionist, and chiropractic assistant. (Tr. at 63.) Even with a sedentary RFC, plaintiff could still perform past relevant work as a customer service rep and hospital receptionist. The ALJ therefore found plaintiff not disabled and denied the application. (Tr. at 64.)

7

## III.  DISCUSSION

**A.     Failure to Develop the Record**

"In general, where . . . the ALJ has held the record open for a certain period for the submission of additional evidence and no evidence is submitted during that period, the ALJ cannot be found to have failed in [her] duty to adequately develop the record." Deso v. Astrue, No. 2:10-CV-223, 2011 WL 5967181, at *7 (D. Vt. Nov. 29, 2011).  In this case, however, plaintiff's counsel advised the ALJ at the hearing that he might need more time, and he subsequently requested an extension within the original thirty day period.  (Tr. at 69.)  The ALJ failed to respond to this request and instead issued a decision denying the claim.

The Commissioner states: "It is not clear that the ALJ agreed at the hearing to grant a second extension." (Def.'s Br. at 3.)  However, the ALJ's response, quoted on page one above, certainly implied that the ALJ would grant a requested extension.  At the very least, the ALJ should have responded to counsel's February 9 letter, which alerted her to the absence of important medical evidence.  Cf. Deso, 2011 WL 5967181, at *7 (remanding under sentence four where the ALJ received a post-hearing letter from the claimant's representative referencing specific evidence missing from the record, yet the ALJ failed to contact the representative to seek that evidence).

The parties do not ask me to determine whether Dr. Thorat's report reached the ALJ's desk before the decision issued.  Cf. Cooper, 2011 WL 240177, at *4 (finding that records faxed the same day the decision was mailed should be considered timely, pre-decisional evidence).  In this case, as in Cooper, the ALJ made no mention of the post-hearing evidence, but I cannot tell if that was because she did not have it or because she ignored it.  In any event,

8

as the Cooper court noted, in a case where the ALJ declines to hold the record open despite receiving notice of the claimant's intent to submit more evidence, considerations of equity support treating the evidence as pre-decisional. "Because the evidence was timely submitted, the ALJ was obligated to explicitly consider it in rendering [her] decision and explain why [she] declined to credit it." Cooper, 2011 WL 240177, at *5.

The Commissioner primarily argues that the report lacks merit, obviating the need for remand. But judicial review is limited to the reasons articulated by the ALJ in the written decision; the Commissioner's lawyers cannot fill in the gaps. See, e.g., Steele v. Barnhart, 290 F.3d 936, 941 (7th Cir. 2002). The doctrine of harmless error applies to judicial review of administrative decisions, so if the court can predict "with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time." Spiva v. Astrue, 628 F.3d 346, 353 (7th Cir. 2010). But an error cannot be deemed harmless just because the ALJ "might have reached the same result had she considered all the evidence and evaluated it as the government's brief does." Id.

In the present case, plaintiff complained of migraine headaches at least two to four times per month, lasting one to two days at a time. She indicated that certain sounds and smells made her headaches worse. She received injections at the emergency room, which left her feeling tired such that she had to lie down in a dark room with an ice pack. She said that the right side of her body was constantly numb and tingling. The headaches were sometimes so severe she could not drive. She also complained that her pain medication left her feeling "goofy." (Tr. at 61.) As indicated above, the ALJ in rejecting these claims noted that no treating physician limited plaintiff to the degree she asserted. (Tr. at 61.)

9

Dr. Thorat's report filled in this gap in the evidence. Dr. Thorat indicated that he had seen plaintiff in the neurology clinic for her headaches since August 2009, approximately six monthly visits. (Tr. at 7.) He offered a diagnosis of hemiplegic migraines, which he characterized as located in the bi-frontal and bi-parietal region, causing throbbing pain (10/10 intensity) with sensory symptoms (tingling and numbness). He indicated that the headaches worsened with bright light or noise, and could last for many hours. (Tr. at 7.) He identified further symptoms of nausea/vomiting, malaise, photosensitivity, visual disturbances, and mental confusion/inability to concentrate. (Tr. at 7.) He indicated that plaintiff experienced headaches approximately once per week, lasting a few hours to the whole day. (Tr. at 8.) He listed as triggers bright lights, lack of sleep, noise, stress, and vigorous exercise; bright lights and noise made the headaches worse, lying in a dark room and medication made them better. (Tr. at 8.) He indicated that her headaches responded to medication, if given early, but the medications caused side effects including sleepiness, dizziness, loss of appetite, and may be contributing to rebound headaches. (Tr. at 9.) He stated that during a migraine, plaintiff was incapacitated and could not work. He further indicated that her headaches were often severe, requiring ER visits and absence from work/school. He estimated that she would be absent about four times per month due to her impairment (Tr. at 10), a level of absenteeism employers would not – according to the vocational expert who testified at the hearing – tolerate (Tr. at 102). During a headache attack, she could not work and had to lie down in a calm, dark room. (Tr. at 11.)

The Commissioner argues that Dr. Thorat's report is conclusory and unsupported by clinical findings or diagnostic test results. However, "it appears that no test exists to confirm the diagnosis of migraine." Tyson v. Astrue, No. 08-cv-383, 2009 WL 772880, at *9 (W.D. Wis.

10

Mar. 20, 2009) (citing National Headache Foundation, Headache Topic Sheet, available at http://www.head aches.org/education/Headache_Topic_ Sheets/Migraine (visited February 23, 2009)); see also Brown v. Astrue, No. 2:07cv1114, 2008 WL 4846863, at *2 (M.D. Ala. Nov. 7, 2008) ("Migraine headaches cannot be diagnosed or confirmed through laboratory or diagnostic techniques."). "Although it is true that a claimant's self-reported symptoms are insufficient by themselves to establish disability, see 20 C.F.R. § 404.1528(a), when these symptoms are documented by a physician in a clinical setting, they 'are, in fact, medical signs which are associated with severe migraine headaches,' and are often the only means available to prove their existence." Tyson, 2009 WL 772880, at *10 (quoting Ortega v. Chater, 933 F. Supp. 1071, 1075 (S.D. Fla. 1996)). The Commissioner notes the absence of treatment records from Dr. Thorat, but this points up the failure to fully develop the record.

Given the importance of this report in potentially filling a significant gap in the proof, I cannot find the ALJ's failure to consider it harmless. I will accordingly remand the matter for consideration of the report under sentence four. For similar reasons, the evidence qualifies as "material" under sentence six. Because the evidence was created after the hearing, I further find that it is "new" and that there is good cause for not producing it sooner. Therefore, remand under sentence six would, in the alternative, be appropriate.

**B.   Credibility**

In assessing the credibility of a social security claimant's testimony, the ALJ must first determine whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. SSR 96-7p. If the claimant suffers from no such impairment(s), or if the impairment(s) could not reasonably be expected to produce the claimant's pain or other symptoms, the symptoms cannot be found to affect her

11

ability to work. SSR 96-7p. If the ALJ finds that the claimant's impairment(s) could produce the symptoms alleged, she must then determine the extent to which the symptoms limit the claimant's ability to work. SSR 96-7p. In making this determination, the ALJ may not discredit the claimant's statements based solely on a lack of support in the medical evidence. Moss v. Astrue, 555 F.3d 556, 561 (7th Cir. 2009). Rather, the ALJ must consider the entire record, including the claimant's daily activities; the frequency and intensity of the symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant takes; treatment, other than medication, for relief of symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p. The ALJ must then provide "specific reasons" for the credibility determination, supported by the evidence and articulated in the decision. SSR 96-7p. The reviewing court will give "an ALJ's credibility determination special, but not unlimited, deference." Shauger, 675 F.3d at 696. The ALJ must consider the factors set forth in the regulations, and she must support the credibility findings with evidence in the record. Id.

In this case, the ALJ set forth the two-step test from SSR 96-7p, then found that while plaintiff impairments "could reasonably be expected to cause the alleged symptoms," plaintiff's statements were "not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. at 61.) The Seventh Circuit has criticized this language as "meaningless boilerplate," Shauger, 675 F.3d at 696, which backwardly "implies that the ability to work is determined first and is then used to determine the claimant's credibility," Bjornson v. Astrue, 671 F.3d 640, 645 (7th Cir. 2012); see also Brindisi ex rel. Brindisi v. Barnhart, 315 F.3d 783, 788 (7th Cir. 2003) ("[T]he apparently post-hoc statement turns the credibility determination process on its head by finding statements that support the ruling

12

credible and rejecting those statements that do not, rather than evaluating the . . . credibility as an initial matter in order to come to a decision on the merits.").

As the Commissioner notes, the use of this "template" may be overlooked if the ALJ continued on with the credibility analysis, providing specific reasons for her finding consistent with the SSR 96-7 factors. See, e.g., Richison v. Astrue, No. 11-2274, 2012 WL 377674, at *3 (7th Cir. Feb. 7, 2012); Cain-Wesa v. Astrue, No. 11-C-1063, 2012 WL 2160443, at *11 (E.D. Wis. June 13, 2012). The ALJ provided some reasons here, but I cannot find them sufficient.

First, the ALJ criticized plaintiff for using Vicodin, even though one of her providers warned that it caused rebound headaches. However, the record shows that even after plaintiff's medications were changed to break the rebound cycle she continued to experience severe headaches. (Tr. at 465, 466-71, 677.) Plaintiff reported "that she would like to not take narcotic pain meds if possible, as she does understand the concept of a rebound headache; but she states that so far the supplements and preventive meds I have put her on are not helping with her migraines." (Tr. at 464.) In response to this report, the provider agreed to give plaintiff Hydrocodone. (Tr. at 464.) Moreover, despite the concerns about rebound, the ALJ cited no medical evidence suggesting that plaintiff's headaches were anything but real, regardless of the cause, or that she exaggerated their effects.

Second, the ALJ criticized plaintiff for using a tanning bed, an activity the ALJ found inconsistent with migraine headaches. However, the ALJ cited no medical evidence supporting this finding. In any event, plaintiff testified that she had not used a tanning bed for more than a year; the medical records confirmed that she suffered a burn while tanning in April 2009, nearly two years prior to the hearing. (Tr. at 520.)

13

Third, the ALJ accused plaintiff of switching doctors after concerns were raised about duplicate pain medication and not following recommendations. This finding appears to be based on a record from Dr. Gatti, a neurologist plaintiff briefly saw about her headaches. (Tr. at 496.) Plaintiff told her primary care physician that Dr. Gatti "brought her to tears" (Tr. at 511) and discontinued further treatment with him, seeking a second opinion elsewhere (Tr. at 492). It is hard to see how this materially diminishes plaintiff's credibility, and the ALJ offers no explanation.

Finally, the ALJ noted that no treating physician limited plaintiff to the degree she asserted. As discussed, the report from Dr. Thorat provides such evidence. The ALJ will on remand have to revisit her credibility finding after considering Dr. Thorat's report. The ALJ must evaluate credibility under all of the factors set forth in SSR 96-7p, paying particular attention to the issue of absences from work due to migraines.[3]

## IV. CONCLUSION

**THEREFORE, IT IS ORDERED** that the ALJ's decision is **REVERSED**, and this matter is **REMANDED** for further proceedings consistent with this decision pursuant to § 405(g), sentence four. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 31st day of July, 2012.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

---

[3] Plaintiff also argues that the ALJ erred in finding her migraines severe yet imposing no limitations based on that condition. However, the ALJ did limit plaintiff from working at unprotected heights or around hazards (Tr. at 60), apparently because of her history of migraines (Tr. at 63).

14